IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FAHEEM POTTAYIL and              :
FARZANA SHIHABUDHEEN,            :
Individually and as Next Friend and :
Guardian of her minor child,     :
SAMEEH POTTAYIL,                 :
                                 :
                Plaintiffs,      :        CIVIL ACTION NO.
                                 :
vs.                              :        1:17-CV-4431-RWS
                                 :
THYSSENKRUPP ELEVATOR            :
CORPORATION and HARTFORD         :
LIFE AND ACCIDENT INSURANCE :
COMPANY,                         :
                                 :
                Defendants.      :

## OPINION AND ORDER

This case comes before the Court on Defendant Thyssenkrupp Elevator Corporation's Motion for Summary Judgment [Dkt. 89] and Defendant Hartford Life and Accident Insurance Company's Rule 52(a) Motion for Judgment [Dkt. 91]. The Court, after a careful review of the record, enters the following Opinion and Order.

## BACKGROUND

In this lawsuit, Plaintiffs Faheem Pottayil and Farzana Shihabudheen, individually and as next friend and guardian of her minor child, Sameeh Pottayil, seek additional supplemental life insurance benefits offered by Defendant

Thyssenkrupp Elevator Corporation ("TKE") to its employees through Defendant Hartford Life and Accident Insurance Company ("Hartford"). The benefits are under Group Policy No. GL-677112 ("the Group Policy"), which was issued to TKE to fund supplemental term life insurance and other benefits under an employee welfare benefit plan sponsored by TKE and governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*

## I.      Factual Background

Beginning on or around February 2, 2009, and continuing until his death, Shihabudeen Pottayil ("Mr. Pottayil") was an employee of TKE. (Statement of Undisputed Material Facts of Def. TKE ["SUMF"], Dkt. [89-2], at ¶ 1.) Mr. Pottayil was the husband of Plaintiff Farzana and the father of Plaintiffs Faheem and Sameeh. (Id. at ¶ 2.)

In March 2009, Mr. Pottayil enrolled in the Supplemental Group Life Insurance Plan ("the Plan"), an ERISA-qualified welfare benefit plan offered by TKE to its employees. (Id. at ¶ 3.) The Plan is fully insured by the Hartford Life and Accident Insurance Company ("Hartford"), which also acts as the Plan's Claims Administrator. (Id.) Mr. Pottayil designated Plaintiffs as his beneficiaries under the Plan. (Id. at ¶ 4.) TKE was the Plan Administrator. (Id. at ¶ 5.)

Upon enrolling in the Plan, Mr. Pottail initially elected Supplemental Life Insurance Coverage in an amount equal to his annual earnings (the "Guaranteed

Issue Amount") to become effective March 4, 2009. (See Dkt. [76] at ¶ 16; Dkt. [78] at ¶ 16.) During the 2013 open enrollment period, Mr. Pottayil elected to increase his Supplemental Life Insurance Coverage from the Guaranteed Issue Amount to an amount equal to give (5) times his annual earnings. (See Dkt. [76] at ¶ 19; Dkt. [78] at ¶ 19.)

Upon the commencement of the 2013 Plan year and continuing until Mr. Pottayil's death more than three years later, TKE deducted premiums from Mr. Pottayil's salary every month for Supplemental Life Insurance Coverage for Mr. Pottayil in the amount sufficient to pay a monthly premium for life insurance coverage in an amount equal to five times Mr. Pottayil's annual earnings. (See Dkt. [76] at ¶ 20; Dkt. [78] at ¶ 20.)

Mr. Pottayil died on April 5, 2016. (Dkt. [89-2] at ¶ 6.) Following Mr. Pottayil's death, Plaintiffs made a claim for the Supplemental Life Insurance Coverage benefit in the amount of $848,000, which was equal to five times Mr. Pottayil's annual earnings. (See Dkt. [76] at ¶ 24; Dkt. [78] at ¶ 24.) On August 9, 2016, Hartford approved the portion of Plaintiffs' claim equal to the Guaranteed Issue Amount of $170,000. (See Dkt. [76] at ¶ 25; Dkt. [78] at ¶ 25.) On August 11, 2016, Hartford rejected Plaintiffs' initial claim for the additional $678,000 in

supplemental life insurance benefits.[1] (See Dkt. [76] at ¶ 26; Dkt. [78] at ¶ 26; Dkt. [89-2] at ¶ 7.)

On September 12, 2016, Plaintiffs, through former counsel, requested a copy of the claim file from Hartford, which Hartford provided on September 27, 2016. (Dkt. [89-2] at ¶ 8.) Also, on September 12, 2016, Plaintiffs, through former counsel, appealed Hartford's initial rejection of their claim. (Id. at ¶ 9.) Hartford denied the appeal on September 29, 2016. (Id.)

On or around March 30, 2017, Plaintiffs, through current counsel, sent TKE a letter requesting that TKE provide certain documentation and information regarding a claim for supplemental life insurance benefits Plaintiffs had made with Hartford that Hartford had rejected initially and again on appeal. (Id. at ¶ 10.) The letter contained 23 separate requests for documents. (Id.)

On June 26, 2017, TKE, through counsel, responded to Plaintiffs' letter. (Id. at ¶ 11.) TKE's June 26th letter responded to each of counsel for Plaintiffs' 23 requests with either responsive documents or an explanation that any responsive documents would reside with Hartford and/or that it had no documents responsive

---

[1] Plaintiffs object to this fact and several other facts as irrelevant and of no consequence in determining TKE's Motion for Summary Judgment. (Pls.' Resp. to Def. TKE's Mot. For Summ. J. [Dkt. 90] at ¶¶ 7, 8, 9, 12, 13, 14, 17, 18, 19, 20, 21.) The Court overrules Plaintiffs' objections and finds that these facts are relevant to the issue of whether Plaintiffs were prejudiced by TKE's delayed production of documents.

to the request. (Id. at ¶ 12.) TKE also explained that TKE does not determine whether to pay any claim for benefits under the Plan and does not maintain records of claims for life insurance benefits. (Id. at ¶ 13.) Rather, TKE explained, Hartford serves as the Claims Administrator and administers and determines claims under the Plan. (Id. at ¶ 14.) Therefore, Hartford maintained any materials related to claims for benefits, and TKE referred Plaintiffs to Hartford for many of the documents requested. (Id.) The documents TKE enclosed in its response included the relevant Plan documents, the 2013 Benefits Guide Corporate Salaried, a screenshot from TKE's open enrollment process showing the Evidence of Insurability ("EOI") requirement, the EOI Form, and communications between TKE and Hartford concerning Plaintiffs' claim. (Id. at ¶ 15.)

Plaintiffs' counsel also addressed his March 30, 2017, request to Hartford. (Id. at ¶ 16.) On or around April 13, 2017, less than 30 days later, Hartford replied, once against attaching Mr. Pottayil's entire claim file, which included, among other things, the Group Policy, the Summary Plan Description, and internal communications between TKE and Hartford.[2] (Id. at ¶ 17.)

---

[2] Plaintiffs state that a genuine issue of material fact exists as to whether the Group Policy was among the documents produced. (Pls.' Resp. to Def. TKE's Mot. For Summ. J. [Dkt. 90] at ¶¶ 17, 19.) However, as the Court will explain in this Opinion and Order, the evidence cited does not establish a genuine dispute.

On or around June 14, 2017, Plaintiffs, through counsel, sent a letter to Hartford regarding the denial of Plaintiffs' request for additional supplemental life insurance benefits, which Hartford treated as a second appeal. (Id. at ¶ 18.) All the documents that Plaintiffs quote and rely upon in connection with their second appeal, including the language of the Group Policy, internal communications between TKE and Hartford, and TKE's correspondence with Plaintiffs, were already in Plaintiffs' possession before Plaintiffs sent their second appeal on June 14, 2017. (Id. at ¶ 19.) On or around July 25, 2017, Hartford denied Plaintiffs' second appeal of their claim for supplemental life insurance. (Id. at ¶ 20.) Plaintiffs did not supplement their second appeal with documents or information that they received from TKE on or around June 26, 2017, even though Hartford had not yet rendered a decision on their second appeal at that time. (Id. a t¶ 21.)

A copy of the Group Policy, with amendatory riders, is contained within the administrative record filed by Hartford on March 3, 2021. (Dkt. [84-1], 2-14). The Group Policy provides that the contract between Hartford and TKE consists of:

    1) The Policy;
    2) any Certificate(s) of Insurance incorporated and made a part of The Policy;
    3) any riders issued in connection with such Certificate(s) of Insurance;
    4) the Policyholder's application, if any, a copy of which is attached to and made part of the Policy when issued; and
    5) any individual application submitted by the Employee and accepted by The Company in connection with The Policy.

(Id. at p. 8.) The Group Policy further provides:

**Certificate(s) of Insurance**
The Company will give individual Certificate(s) of Insurance to:
    1) the Policyholder; or
    2) any other person according to a mutual agreement among the other person, the Policyholder, and The Company; for delivery to persons covered under The Policy and which will explain the important features of The Policy.

(Id. at p. 9.)

Under the caption, **"INCORPORATION PROVISION**," the Group Policy lists "Certificate(s) of Insurance and Rider(s)" which "are attached to, incorporated in and made a part of, The Policy." (Id. at p. 10.) One of the Certificate(s) of Insurance listed in the **INCORPORATION PROVISION** is "Form GBD-1100 (10/08). (Id.)

The Certificate of Insurance for TKE's **"Supplemental Dependent Life, Supplemental Term Life, Supplemental Accidental Death and Dismemberment"** coverage under the Group Policy ("the Supplemental Life Certificate") is contained in the administrative record filed by Hartford on March 3, 2021. (Id. at pp. 15-54.) The face page of the Supplemental Life Certificate indicates in the lower left-hand corner that the Certificate is "Form GBD-1100 (10/08)." (Id. at p. 20.)

With respect to the Guaranteed Issue amount for supplemental life insurance, the Supplemental Life Certificate provides for "1 or 2 times Your annual Earnings, subject to a maximum of $750,000 rounded to the next higher $1,000 if not already

7

a multiple of $1,000." (Id. at p. 22.) In the section entitled "**ELIGIBILITY AND**

**ENROLLMENT**," the Supplemental Life Certificate contains the following

provision regarding EOI:

> **Evidence of Insurability:** *What is Evidence of Insurability?*
> Evidence of Insurability must be satisfactory to Us and may include,
> but will not be limited to:
> 1) a completed and signed application provided by Us;
> 2) a medical examination;
> 3) an attending Physician's statement; and
> 4) any additional information We may require.
>
> Evidence of Insurability will be furnished at Our expense except for
> Evidence of Insurability due to late enrollment. We will then determine
> if You or Your Dependents are insurable for initial coverage or an
> increase in coverage as described in the Increase in Amount of Life
> Insurance provision.

(Id. at p. 24.) The Increase in Amount of Life Insurance provision states the

following:

> **Increase in Amount of Life Insurance:** *If I request an increase in the*
> *Amount of Life Insurance for myself or my Dependents, must we*
> *provide Evidence of Insurability?*
> If You or Your Dependents are:
> > 1)     already enrolled for an Amount of Supplemental Life
> >        Insurance under The Policy, then You and Your
> >        Dependents must provide Evidence of Insurability for any
> >        increase; or
> > 2)     not already enrolled for Supplemental Life Insurance
> >        under the Policy, You and Your Dependents must provide
> >        Evidence of Insurability for any amount of Supplemental
> >        Life Insurance coverage including an initial amount.
>
> In any event, if the Amount of Life Insurance You request is greater
> than the Guaranteed Issue Amount, You or Your Dependents, as
> applicable, must provide Evidence of Insurability.

8

> If Your Evidence of Insurability is not satisfactory to Us, the Amount of Life Insurance You had in effect on the date immediately prior to the date You requested the increase will not change.
> . . .

(Id. at p. 27.)

The Plan documents provide that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of The Policy." (Id. at p. 39.)

## II.    Current Procedural Posture

Following motion practice and a series of amendments to Plaintiffs' complaint, two claims are pending in this case. First, Plaintiffs assert a claim against Hartford for recovery of supplemental life insurance benefits under Section 502(a) of ERISA. Second, Plaintiffs assert a statutory penalty claim against TKE for its alleged failure to supply required plan documents in accordance with Section 502(c) of ERISA.

TKE seeks judgment in its favor as a matter of law on the statutory penalty claim. Hartford moves the Court pursuant to Federal Rule of Civil Procedure 52(a) for judgment on the administrative record as to Plaintiffs' claim for recovery of benefits. The Court first will address Plaintiffs' claim against TKE and then will address Plaintiffs' claim against Hartford.

**DISCUSSION**

I.     **Section 502(c) Claim Against TKE for Refusal to Supply Requested Information**

     A.     <u>Standard of Review</u>

The typical summary judgment standard is the applicable standard of review for claims brought pursuant to 29 U.S.C. § 1132(c). <u>Harris v. Lincoln Nat'l Life Ins. Co.</u>, 365 F. Supp. 3d 1208, 1230 n.22 (N.D. Ala. 2019). That standard is well-established.

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

The appliable substantive law identifies which facts are material. <u>Id.</u> at 248. A fact is not material if a dispute over that fact will not affect the outcome of the case under the governing law. <u>Id.</u> An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. <u>Id.</u> at 249-50.

In resolving a motion for summary judgment, the court will "consider the record and draw all reasonable inferences in the light most favorable to the non-moving party." <u>Blue v. Lopez</u>, 901 F.3d 1352, 1357 (11th Cir. 2018). But the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249–50 (citations omitted).

B.   <u>Analysis</u>

Under ERISA, "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan

description,[3] and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). Section 502(c)(1)(B) provides the following regarding the discretionary imposition of a statutory penalty for an administrator's failure to comply with § 1024(b)(4):

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1). Federal regulations have increased this penalty to $110 per day for violations occurring after July 29, 1997. 29 C.F.R. § 2575.502c-1.

The penalty provision of § 1132(c) "is meant to be in the nature of punitive damages, designed more for the purpose of punishing the violator than compensating the participant or beneficiary." Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1232 (11th Cir. 2002). "[B]ecause § 1132(c) imposes penalties, it must be strictly and narrowly construed." Williamson v. Travelport, LP, 953 F.3d 1278, 1293

---

[3] The comma placed after "summary" is in the original text of the statute but is likely a scrivener's error. See Till v. Lincoln Nat'l Life Ins. Co., No. 2:14–CV–721–WKW, 2014 WL 6895285, at *5 n.7 (M.D. Ala. Dec. 5, 2014).

(11th Cir. 2020). "The decision to grant relief under 29 U.S.C.A. § 1132(c) is committed to the discretion of the trial judge." <u>Paris v. Profit Sharing Plan for Emp. of Howard B. Wolf, Inc.</u>, 637 F.2d 357, 362 (5th Cir. 1981).[4]

"In determining whether to assess a penalty under this provision, courts generally consider factors such as bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary." <u>Hamilton v. Mecca, Inc.</u>, 930 F. Supp. 1540, 1556 (S.D. Ga. 1996). Because § 1132(c) is punitive rather than compensatory, a plaintiff need not demonstrate prejudice, bad faith, or harm to obtain § 1132(c) penalties. <u>Daughtrey v. Honeywell, Inc.</u>, 3 F.3d 1488, 1494 (11th Cir. 1993) ("[S]ection 1132(c) is intended to punish noncompliance with the employer or administrator's disclosure obligations and not to compensate the participant."); <u>Curry v. Contract Fabricators Inc. Profit Sharing Plan</u>, 744 F. Supp. 1061, 1066 (M.D. Ala. (1988) (stating that "because § 1132(c) is punitive rather than compensatory in nature, this court sees no reason to condition its operation on prejudice"). However, the absence of prejudice, bad faith, or harm is a factor the Court should consider in exercising its discretion to award penalties.

---

[4] In <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Byars v. Coca-Cola Co., 517 F.3d 1256, 1271 (11th Cir. 2008) ("While a district court may not deny penalties solely on the basis of a lack of prejudice, prejudice is a factor that a court should consider in exercising its discretion."); Daughtrey, 3 F.3d at 1494 (considering an employer or administrator's bad faith to be relevant under section 1132(c)); Curry, 744 F. Supp. at 1066 ("[O]f course, reason dictates that lack of prejudice should be a factor considered in determining whether to impose a civil penalty.").

In this case, Plaintiffs, through counsel, requested 23 separate categories of documents on March 30, 2017. The documents requested were not limited to those required to be supplied pursuant to § 1024(b)(4) but included such requests as "[a]ll documents relevant to the Claim" and various documents, notices, and communications related to the Plan, EOI procedures, and the administration of Plaintiffs' claim. (Dkt. [83-1] at 5-7.)

TKE provided a comprehensive response to Plaintiffs' 23 separate requests for documents but not within the statutory period provided by § 1132(c). Rather, it was not until June 26, 2017, that TKE responded to the request of March 30, 2017. Taking into account the 30-day time period that TKE had under the statute to respond, TKE's response was 58 days late.

Notwithstanding the TKE's delay, TKE supplied to Plaintiffs the Plan documents that § 1024(b)(4) requires. Among the documents that TKE included in

its response were the Group Policy and the Summary Plan Description. Plaintiffs argue that a genuine issue of material fact exists as to whether the documents TKE enclosed in its response included the Group Policy. In this regard, Plaintiffs point to language in the document that TKE identifies as the Group Policy, which states the following:

> AMENDMENT TO GROUP POLICY GL/GLT/GRH-677112 ON JANUARY 3, 2017. ANY CHANGES BETWEEN THIS POLICY AND THE PREVIOUSLY ISSUED POLICY ARE EFFECTIVE JANUARY 1, 2017. ALL OTHER TERMS, CONDITIONS AND DATES REMAIN UNCHANGED.

(Dkt. [83-1] at 52.) Relying on this language and asserting that there may have been terms, conditions, and dates in the previously issued policy that remained unchanged, Plaintiffs maintain that TKE should have provided the previously issued policy to comply fully with § 1024(b)(4).

Plaintiffs also state that language in the Certificate of Insurance creates a genuine issue of fact as to whether the document that TKE represents is the Group Policy is in fact the Group Policy.  The Certificate of Insurance provides:

> We have issued The Policy to the Policyholder. Our name, the Policyholder's name and the Policy Number are shown above. The provisions of the Policy, which are important to You, are summarized in this certificate consisting of this form and any additional forms which have been made a part of this certificate. This certificate replaces any other certificate We may have given to You earlier under the Policy. The Policy alone is the only contract under which payment will be made. Any difference between the Policy and this certificate will be settled according to the provisions of the Policy on file with Us at Our

home office. The Policy may be inspected at the office of the Policyholder.

(Dkt. [83-1] at 67.) Plaintiffs maintain that TKE has never provided Plaintiffs with the Policy on file with Hartford at its home office.

This Court's review of the document that both TKE and Hartford represent to be the Group Policy informs that there is no genuine dispute as to whether this is the Group Policy. The document is a comprehensive, ten-page document that contains the name of the policyholder, the policy number, an effective date, a table of contents, a schedule of insurance, premium provisions, policy provisions, and an incorporation provision. (Dkt. [83-1] at 52-61.) The document is not merely a recitation of amendments that must be read in conjunction with a separate document. This document stands on its own and includes even those terms, conditions, and dates that did not change. The prefatory language on the first page of the Group Policy and the language in the Certificate of Insurance simply do not create a genuine issue for trial.

The Court further finds that TKE's short delay of 58 days in responding to Plaintiffs' request for documents does not warrant the imposition of a penalty, particularly in light of TKE's good-faith effort to respond in a comprehensive manner to Plaintiffs' wide-ranging requests and the absence of prejudice to Plaintiffs. See Disanto v. Wells Fargo & Co., No. 8:05-CV-1031-T-27MSS, 2007 WL 2460732, at *15 (M.D. Fla. Aug. 24, 2007) (declining to impose penalty for 33-

day delay where no showing of calculated delay, bad faith, or significant prejudice). The Court is of the opinion that TKE could have further shown good faith by advising Plaintiffs' counsel that it was in the process of drafting a response and gathering the requested documents, but Plaintiffs have not pointed to any evidence that TKE's failure to respond within the 30-day window was a calculated delay or in bad faith. Moreover, Plaintiffs suffered no prejudice as a result of TKE's delayed production of documents. At the time of Plaintiffs' letter, they were not facing an impending deadline or a pressing need for the information. Plaintiffs had already made a claim for benefits to Hartford, and Hartford had denied both the claim and Plaintiffs' appeal of the claim denial. The Court additionally notes that Plaintiffs received the documents from TKE in enough time to supplement their second appeal of the benefits denial, which Plaintiffs filed on June 14, 2017. Plaintiffs did not supplement their second appeal with any of the documents from TKE, which further indicates that Plaintiffs were not harmed by TKE's slight delay.

Also, Hartford provided Plaintiffs a copy of the full claim file on April 13, 2017, which means that Plaintiffs had access to the Group Policy, the Summary Plan Description, and internal communications between Hartford and TKE within 30 days of the request made of TKE. The only documents Plaintiffs did not have until TKE provided its response on June 26, 2017, were documents that are not within the scope of those required to be provided under 29 U.S.C. § 1024(b)(4). As set forth

above, § 1024(b)(4) requires the administrator to supply "a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract or other instruments under which the plan is established or operated." The residual clause referring to "other instruments under which the plan is established or operated" includes only "formal or legal documents under which a plan is set up or managed." Williamson, 953 F.3d at 1294-95 (citation and internal marks omitted). "Penalties . . . cannot be imposed for failure to provide documents other than those specifically enumerated in § 1024(b)(4)." Id. at 1294. As such, TKE's delayed production of documents not within the scope of § 1024(b)(4) did not prejudice Plaintiffs and does not support a claim for statutory penalties.

In sum, under the circumstances presented in this case, where the delay was slight, there was no bad faith, and Plaintiffs suffered no prejudice, the Court exercises its discretion under 29 U.S.C. § 1132(c)(1) not to impose a penalty upon TKE.

## II.   Section 502(a)(1)(B) Claim for Recovery of Benefits Against Hartford

### A.   Standard of Review

ERISA provides a claimant the right to seek redress in federal court, but the statutory language does not give a standard for reviewing benefits decisions by plan or claim administrators. Blankenship v. Metro. Life Ins. Co., 644 F.3d 1350, 1354

(11th Cir. 2011) (citing <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 109

(1989)). Given the silence of the statute, the Eleventh Circuit has developed a multi-

step framework for analyzing ERISA claims and administrators' decisions. <u>See</u>

<u>Blankenship</u>, 644 F.3d at 1354. The framework is as follows:

(1)     Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2)     If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3)     If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4)     If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5)     If there is no conflict, then end the inquiry and affirm the decision.

(6)     If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

<u>Id.</u> at 1355. The court undertakes the review by considering "the material available

to the administrator at the time it made its decision." <u>Id.</u>

B.    Analysis

Here, the Court need not proceed past the first step of the multi-step framework for analyzing ERISA claims and administrators' decision. Applying the de novo standard to determine whether Hartford's benefits denial was wrong, the Court finds that Hartford's decision was not wrong. Therefore, that decision is due to be upheld.

"Federal common law generally applies to the interpretation of policy language under ERISA." Raymond v. Life Ins. Co. of N. Am., 924 F. Supp. 2d 1345, 1349 (S.D. Fla. 2010) (citing Kane v. Aetna Life Ins., 893 F.2d 1286, 1285 (11th Cir. 1990)). "As a general matter, unambiguous language in an ERISA plan must be interpreted and enforced in accordance with its plain meaning." Raymond, 924 F. Supp. 2d at 1349 (citation and punctuation omitted). When plan documents unambiguously address the substantive rights of the parties at issue, the plan language controls. Meadows ex rel. Meadows v. Cagle's, Inc., 954 F.2d 686, 691 (11th Cir. 1992).

In this case, the Group Policy and the Supplemental Life Certificate are the applicable Plan documents with respect to Plaintiffs' claim for additional supplemental life insurance benefits. The Group Policy incorporates the

Supplemental Life Certificate and makes it a part of the Group Policy. (Dkt. [84-1] at p. 9.)

Plaintiffs argue that the Supplemental Life Certificate is not a Plan document and that there consequently was no requirement that Mr. Pottayil submit EOI when he elected to increase his Supplemental Life Insurance Coverage. Plaintiffs' contentions are without merit. The Policy provides that it consists of several items, including, among other things, the following: "1) The Policy [and] 2) any Certificate(s) of Insurance incorporated and made a part of The Policy." (Dkt. [84-1] at p. 8.) The Policy's Incorporation Provision provides that Certificate of Insurance Form CBD-1100 (10/08) (67712) 3.35 has been made a part of the Policy. (Id. at p. 10.) The Incorporation Provision further states that "[t]he provisions found in the Certificate(s) of Insurance will address the benefit plan, period of coverage, exclusions, claims and other general policy provisions pertaining to state insurance law requirements." (Id.)

Plaintiffs assert that only a one-page document constitutes the Certificate of Insurance that was incorporated into and made a part of The Policy. (Dkt. [84-1] at p. 20.) Plaintiffs point out that this is the only page labeled "Form GBD-1100 (10/08) (677112) 3.35." Hartford argues that the Certificate of Insurance consists of 40 pages, notwithstanding that only one page contains the form number. The Court agrees with Hartford.

Significantly, the one-page document that Plaintiffs maintain constitutes the entirety of the Certificate of Insurance does not address the various matters that the Incorporation Provision states the Certificate of Insurance will address. (See Dkt. [84-1] at pp. 10 and 20.) Rather, the Table of Contents for the remaining pages of the Certificate of Insurance reveals that the period of coverage, exclusions, and other general provisions are covered in the pages that Hartford correctly contends also make up the Certificate of Insurance. (See Dkt. [84-1] at p. 21.) Additionally, the Amendatory Rider contained within the Supplemental Life Certificate indicates on the first page that it is "Form PA-9394 (10/08)" [id. at p. 42], which is also listed as one of the "Rider(s)" that is "attached to, incorporated in and made a part of, The Policy" [id. at p. 10]. The Amendatory Rider states that it "is attached to a certificate given in connection with the Policy" and "is intended to amend Your Certificate, as indicated below, to comply with the laws of Your state of residence." (Id. at p. 42.) The Amendatory Rider then lists amendments to other provisions found in the Supplemental Life Certificate and concludes with the following statement: "In all other respects the certificate remains the same." (Id. at p. 47.) This language supports Hartford's argument that the pages that precede the Amendatory Rider are part of the Certificate of Insurance that is incorporated into and made a part of the Group Policy. For these reasons, the Court finds that all 40 pages are part of the Certificate of Insurance and are likewise a part of the Group Policy and Plan.

The sole remaining issue that the Court must determine is whether the Plan documents required Mr. Pottayil to submit EOI to increase his life insurance coverage above the Guaranteed Issue Amount. This Court thoroughly examined this issue in its Opinion and Order of October 9, 2018 [Dkt. 37] and held that the Plan language unambiguously required Mr. Pottayil to submit EOI to apply for an increase in supplemental life insurance coverage. (Dkt. [37] at pp. 15-18.) The parties later disputed what documents constituted the Plan documents, and the Court found that this genuine dispute put its prior holding in question. (Dkt. [75] at pp. 1-2.) Now that the record has been perfected and the contents of the Plan documents confirmed, the Court concludes that its prior holding was correct. The provisions of the Supplemental Life Certificate, which the Court also refers to herein as the Certificate of Insurance, indisputably required Mr. Pottayil to submit EOI to increase his supplemental life insurance coverage above the Plan's Guaranteed Issue Amount, (see Dkt. [84-1] at pp. 24, 27), and the Supplemental Life Certificate was expressly incorporated into and made a part of the Group Policy.

Since Plaintiffs do not dispute that Mr. Pottayil failed to submit EOI as required by the Plan documents and there is no evidence that he did, no additional Plan benefits are payable. Hartford's benefits decision was therefore not wrong and is due to be upheld. Hartford is entitled to judgment on the administrative record.

## CONCLUSION

For the foregoing reasons, Defendant Thyssenkrupp Elevator Corporation's Motion for Summary Judgment [Dkt. 89] and Defendant Hartford Life and Accident Insurance Company's Rule 52(a) Motion for Judgment [Dkt. 91] are **GRANTED**. Defendant Hartford Life and Accident Insurance Company is entitled to judgment as a matter of law on Plaintiffs' claim for recovery of supplemental life insurance benefits under Section 502(a) of ERISA (Count I), and Defendant Thyssenkrupp Elevator Corporation is entitled to judgment as a matter of law on Plaintiffs' statutory penalty claim under Section 502(c) of ERISA (Count II).

SO ORDERED this 12th day of October, 2021.

**RICHARD W. STORY**
United States District Judge